## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO. 08-4 (ESH)** |
| | **:** | |
| **HASKELL EDWARD PARKER,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following sentencing recommendation and reasons in support of such recommendation:

1.      On March 7, 2008, the defendant pleaded guilty to one count of Bank Robbery, in violation of 18 U.S. Code §2113(a).  Pursuant to the plea agreement, the defendant agreed not to seek a downward departure for any reason from the applicable Guidelines range established by the Sentencing Guidelines, and the government agreed not to oppose a sentence of incarceration at the low end of the applicable Guidelines range or 46 months, whichever is greater.  *See* Plea Agreement, filed March 7, 2008, at p.3.  The Presentence Investigation Report has determined the applicable Guidelines range to be 37 to 46 months imprisonment[1]; accordingly, the government requests that the Court sentence the defendant to 46 months imprisonment.

---

[1]      As explained more fully herein, the government disputes the calculation of defendant's criminal history in the Presentence Investigation Report and believes that the applicable Guidelines range is 46 to 57 months imprisonment.

<u>Facts</u>

2.       On December 21, 2007, defendant walked into the SunTrust Bank located at 1369 Connecticut Avenue, N.W., approached a teller and passed a note demanding money.  The teller complied with defendant's demand and passed him a total of $695.  A tracking device was hidden in these monies, and that device soon led the police to defendant.

3.       Defendant committed an additional bank robbery in the District of Columbia on December 17, 2008, when he walked into another branch of the SunTrust Bank, located at 2929 M St., N.W., approached a teller and passed a similar note demanding money.  The teller complied with defendant's demand and passed him a total of $1,397.  In consideration of defendant's guilty plea, the government has agreed not to bring any charges in connection with this robbery.  *See* Plea Agreement at p. 2.  However, the defendant has agreed to pay restitution to the bank in the total amount taken during this robbery.  *Id.* at 1.

<u>Acceptance of Responsibility</u>

4.       The government agrees that the defendant should receive an additional one point adjustment for acceptance of responsibility pursuant to §3E1.1(b) of the Sentencing Guidelines.  *See* Plea Agreement at p. 3.

<u>Criminal History Computation</u>

5.       The Presentence Investigation Report (hereinafter "PSR") concludes that defendant's criminal history category is III.  In doing so, the PSR assigns only three points to a 1995 conviction for three counts of Bank Robbery.  *See* PSR at ¶30.  The government believes that an additional two points should be assessed for this conviction under §4A1.1(f) of the United States Sentencing Commission, <u>Guidelines Manual</u> (2007) (hereinafter "Sentencing Guidelines" or "U.S.S.G."), and

that defendant's correct criminal history category is IV.

6.      As the PSR notes, defendant was charged in 1995 with committing a total of eight bank robberies and one attempted bank robbery between February 15, 1995, and May 19, 1995. Defendant was arrested on May 19, 1995, while attempting to rob a bank that he had robbed twice before. There were no intervening arrests. Defendant was charged in a nine-count indictment with all of the offenses and thereafter pled guilty to three counts involving three separate bank robberies. Defendant was sentenced on December 11, 1996, to 120 months imprisonment on each count and the sentence on each count was to run concurrently with the others. *See* PSR at ¶30.

7.      U.S.S.G. §4A1.1(f) provides that 1 point shall be added "for each prior sentence resulting from a conviction of a crime of violence that did not receive any points ... because such sentence was counted as a single sentence...." The term "prior sentence" is defined in §4A1.2(a)(1) as "any sentence imposed upon adjudication of guilt ..., for conduct not part of the instant offense." The Sentencing Guidelines further explain how to determine whether multiple prior sentences should be counted separately or as a single sentence:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest .... If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. See also §4A1.1(f).

U.S.S.G. §4A1.2(a)(2). Given that defendant's 1995 sentences resulted from offenses contained in the same charging instrument and those sentences were imposed on the same day, the government agrees with the PSR that defendant's multiple prior sentences for his 1995 Bank Robbery convictions should be counted as a single sentence for purposes of applying §4A1.1(a), (b), and (c).

8.      As a result of the application of §4A1.2(a)(2) to defendant's 1995 Bank Robbery convictions, and as that section of the Sentencing Guidelines specifically contemplates, §4A1.1(f) also should be considered.  In this case, since defendant did not receive any points under §4A1.1(a), (b) or (c), for two of the three bank robberies he committed in 1995, and since the sentence of 120 months imprisonment that he received for each robbery would have been assessed three points under §4A1.1(a) had it been considered separately, defendant should receive an additional point for each robbery under §4A1.1(f).  The example provided in the commentary and application notes to U.S.S.G. §4A1.1 is precisely on point here.  As note six explains:

> For example, a defendant's criminal history includes two robbery convictions for offenses committed on different occasions.  The sentences for these offenses were imposed on the same day and are counted as a single prior sentence.  If the defendant received a five-year sentence of imprisonment for one robbery and a four-year sentence of imprisonment for the other robbery (consecutively or concurrently), a total of 3 points is added under §4A1.1(a).  An additional point is added under §4A1.1(f) because the second sentence did not result in any additional point(s) (under §4A1.1(a), (b), or (c)).

U.S.S.G. §4A1.1, comment. (n.6) (internal citation omitted).  *See also, United States v. Love*, 134 F.3d 595, 607-8 (4th Cir. 1998) (finding that court's addition to defendant's criminal history of one point each for multiple prior robberies that were committed on separate occasions but consolidated for sentencing was "legally correct" under §4A1.1(f)).

9.      Defendant thus should be assessed 5 points under §§4A1.1(a) & (f) for the 1995 Bank Robbery convictions, resulting in a total of 7 criminal history points and a criminal history category of IV.  This criminal history category more accurately reflects the seriousness of defendant's criminal history and also promotes the goal of uniformity in sentencing.  As the Fourth Circuit explained in upholding a district court's determination that the defendant in that case was a *de facto* career

offender because he had committed two prior bank robberies that were consolidated for sentencing

and thus treated as related for Sentencing Guidelines purposes:

> It is unlikely that the Sentencing Commission sought to place sentencing courts in a
> virtual straightjacket by limiting consideration of all related convictions of crimes of
> violence to a maximum of three criminal history points. Such an approach would
> dictate that no matter how heinous a violent crime spree, it could at most boost a
> defendant's criminal history by three points. This approach could also undermine the
> goal of uniformity in sentencing. Individuals who for reasons of convenience or
> economy fortuitously had prior convictions consolidated for sentencing might receive
> much different treatment than defendants who had separate prior sentenced.

*United States v. Lawrence*, 349 F.3d 724, 730 (4th Cir. 2003), *cert. denied*, 540 U.S. 1229 (2004).

10.    The PSR writer declined to apply additional points to defendant's 1995 Bank Robbery

convictions, explaining that "the offenses were not separate convictions consolidated at sentencing,

which is the standard for the additional two points [under] §4A1.1(f)." PSR at p.22. However, the

case law supports the conclusion that the offenses here in fact are separate convictions. For example,

in *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court considered whether a defendant

who was found guilty of six counts of carrying and using a firearm during and in relation to bank

robberies that occurred on separate dates, could be sentenced on five of those counts to the enhanced

statutory penalty called for in the event of a "second or subsequent conviction." *See* 18 U.S.C.

§924(c). The Court concluded that the enhanced penalties were appropriate, since in the context of

the statute, the term "'conviction' refers to the finding of guilt by a judge or jury that necessarily

precedes the entry of a final judgment of conviction. A judgment of conviction includes both the

adjudication of guilty and the sentence." *Id.* at 132. In *United States v. Brandon*, 363 F.3d 341,

346-7 (4th Cir. 2004), the Fourth Circuit relied on *Deal* in rejecting the defendant's argument that the

entry of a single judgment based on his plea to four offenses that were committed on separate dates

constituted only a single conviction. Instead, the Fourth Circuit concluded that the judgment against

5

the defendant "encapsulated multiple findings of guilt as to a handful of separate offenses spread out over the course of months. Each of those distinct findings of guilt, stemming from a separate criminal act, is best understood as a 'conviction' for purposes of the career offender sentencing guideline." Likewise, in this case, the 1995 judgment against defendant included distinct findings of guilt stemming from three separate criminal acts, each of which is a separate conviction. Accordingly, the reason for the PSR writer's decision not to apply §4A1.1(f) in this case is flawed and should be rejected.

<u>Restitution</u>

11.    Defendant objects to the restitution amounts set forth in the PSR, arguing that the total "should be reduced by the cash that was recovered from him when he was arrested." PSR at 23. Defendant's request should be denied for several reasons. First, in the plea agreement, defendant specifically agreed to pay restitution to SunTrust Bank in the amount of $695 for the charged robbery and $1397 for the uncharged robbery. *See* Plea Agreement at 1. Defendant is bound by his agreement and now cannot seek unilaterally to alter its terms.

12.    Second, the monies recovered from defendant at the time of his arrest are proceeds of the bank robbery subject to forfeiture. Again, in his plea agreement, defendant agreed not to contest the forfeiture of those monies. *See* Plea Agreement at pp. 1-2. As a result, defendant has no lawful claim to the monies and cannot direct that the monies be applied to reduce his restitution obligation. Again, to do so is an effort to unilaterally alter the terms of the plea agreement.

13.    Finally, as the PSR writer correctly notes, restitution and forfeiture "are two distinct concepts." PSR at 23. Even had defendant not made the agreements as to restitution and forfeiture noted above, the Court still should require him to pay full restitution regardless of the outcome of

6

any future forfeiture proceedings involving the seized monies.  In *United States v. Various Computers and Computer Equipment*, 82 F.3d 582 (3rd Cir.), *cert. denied*, 519 U.S. 973 (1996),  the Third Circuit rejected defendant's argument that the district court "violated the prohibition against multiple punishments by first ordering him to pay restitution for the value of the computers [deemed to be proceeds of defendant's crime], and later, in a subsequent forfeiture proceeding, allowing forfeiture of the computers to the United States."  *Id.* at 586.  The Court provided two rationales for its decision.  First, "paying restitution plus forfeiture at worst forces the offender to disgorge a total amount equal to twice the value of the proceeds of the crime.  Given the many tangible and intangible costs of criminal activity, this is in no way disproportionate to the harm inflicted upon government and society by the offense."  *Id.* at 588 (citation and internal quotation omitted).  Second, "payment of restitution in no way alters the status of the property as ill-gotten gains.  Restitution operates to make the victim of the crime whole, not to confer legal ownership on the offender of the stolen property."  *Id.*  Put another way, defendant "has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity."  *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir.), *reh'g denied*, 22 F.3d 1096 (5th Cir.), *cert. denied*, 513 U.S. 1015 (1994).  As a result, this Court should not entertain defendant's effort to benefit from the government's fortuitous recovery of some of the proceeds of the bank robbery by reducing his restitution obligation accordingly.

<u>Sentencing Recommendation</u>

14.    The Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), ruled that the Sentencing Guidelines are advisory rather than mandatory.  However, the Court made clear that in determining the appropriate sentence for a defendant, federal courts still are required to calculate and

7

consider the applicable Guidelines range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted sentencing disparities and to provide restitution to victims. *Id.* at 259-60. Moreover, in determining an appropriate sentence for the defendant, federal courts also must continue to consider the need for the sentence imposed to accomplish the following sentencing objectives: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care. *Id.* at 260; *see also* 18 U.S.C. § 3553(a)(2).

15. Arguably, the applicable Sentencing Guidelines range is the most important factor the Court can consider in sentencing the defendant in this case because this range is calculated based upon the Sentencing Commission's careful consideration of all of the factors the Supreme Court and Congress have directed courts to consider in sentencing defendants. Indeed, the Supreme Court recently held that Courts of Appeal "may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines," thus validating the D.C. Circuit's practice of doing so. *United States v. Rita*, ___ U.S. ___, 127 S.Ct. 2456, 2462 (2007). *See also, United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006) ("We agree with our sister circuits that a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness.") The applicable Guidelines range in this case reflects an intensive objective analysis of sentences imposed on defendants similarly situated to defendant and is a critical tool to avoid unwarranted sentencing disparities. According to the PSR, the defendant has an adjusted offense level of 19 and a criminal history category of III, resulting in a Guidelines range of 37 to 46 months. As argued *supra*, the government believes that the correct criminal history category

8

for defendant is IV, resulting in a Guidelines range of 46 to 57 months. Nonetheless, the government's requested sentence of 46 months imprisonment is within both ranges.

16.    Turning specifically to the § 3553(a) factors, the defendant's violent offense unquestionably is serious and for that reason alone, warrants a 46-month sentence of incarceration. The defendant accosted the victim at work and thus robbed him not just of the bank's money, but more importantly, of his security in a place where he must come every day to earn a living.

17.    The other § 3553(a) factors also support a 46-month sentence of incarceration in this case. As the PSR reflects, defendant has been committing violent criminal offenses for thirty years, and the instant case represents his fifth conviction for a robbery offense. Defendant also has a history of failing to comply with the conditions of his probation or supervised release. *See* PSR at ¶¶ 26, 27, 30. With respect to defendant's most recent conviction, those violations appear to be the result of his recalcitrance toward complying with the Court's order to refrain from illegal drug use. As Magistrate Judge Facciola found, "I am convinced that defendant's attitude toward supervision is that there is nothing wrong with 'smoking a little dope' on weekends.... The picture presented is that of a person who, although employed and taking his medication has an attitude that is contrary and resistant to the efforts to get him to stop smoking marijuana. He simply has not and will not make a genuine effort to accept the resources being made available to him by the Probation Office to help him stop." Report and Recommendation dated March 23, 2006, *United States v. Haskell Edward Parker*, CR 95-146 (D.D.C.). Defendant continues to demonstrate a similarly cavalier attitude toward his obligation to abide by the law, having committed the instant offense less than six months after his release from imprisonment for the very same offense. Notwithstanding his lengthy history of mental illness, defendant clearly understood at the time that what he had done was wrong,

since he stated spontaneously upon being detained by the police, "I thought you were going to shoot me.  I never take a gun into a bank."  Incarceration thus appears to be the only means by which the Court can guarantee that the public will be protected from defendant's violent criminal endeavors. A sentence of 46 months imprisonment therefore not only is consistent with the Sentencing Guidelines and Congress's goal of ensuring uniformity in sentencing, but also is entirely appropriate and necessary to satisfy Congress's other stated sentencing objectives.

WHEREFORE, the United States respectfully requests that the Court impose a sentence of 46 months imprisonment in this case.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

By:  _____
        /s/

ANGELA G. SCHMIDT
Assistant United States Attorney
Texas Bar No. 17764980
Federal Major Crimes Section
555 4th Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-7273
Angela.Schmidt@usdoj.gov

10