IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 08-004 (ESH) |
| | ) | |
| HASKELL EDWARD PARKER, | ) | Sentencing: July 15, 2008 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT HASKELL EDWARD PARKER'S
MEMORANDUM IN AID OF SENTENCING**

Mr. Haskell Edward Parker, by his attorney, pursuant to Federal Rule of Criminal Procedure 32, hereby respectfully submits his Memorandum in Aid of Sentencing. Based on all of the § 3553 sentencing factors in this case, including the correctly calculated guidelines range of 37-46 months, the defense respectfully submits that Mr. Parker should be sentenced to no longer than 37 months imprisonment, plus 3 years of supervised release. In addition, Mr. Parker's restitution obligation should be offset by the amount of cash recovered from Mr. Parker at the time of his arrest.

**BACKGROUND**

**A.    Haskell Parker's Background.**

The dominating fact of Mr. Parker's life is chronic mental illness.[1] As noted in the PSR, Mr. Parker's father suffered from mental illness and alcoholism throughout his life until his death from an intestinal disease in 1993. *See* PSR ¶¶ 46, 48. Mr. Parker, defendant, "has a well

---

[1]    In the detention memorandum entered in this case, Magistrate Judge Facciola described Mr. Parker as a "mentally ill man" suffering from paranoid schizophrenia.

documented history of mental health issues." *Id.*, ¶ 55. His history includes multiple diagnosis of acute Schizophrenia, Paranoid Type, numerous hospitalizations at St. Elizabeth's and elsewhere, at least one finding of not guilty by reason of insanity (in 1983), and at least one finding of not criminally responsible (in 1989). While incarcerated at the D.C. Jail in 1983, Mr. Parker attempted to kill himself. *See id.*, ¶ 58.

As recently as October 2006, Mr. Parker was diagnosed with chronic psychotic illness. *See* Ex. 1 (letter and attached forensic evaluation). The doctors at Butner found that Mr. Parker "has clearly suffered from a chronic psychotic illness for years." *Id.* at 6. An October 3, 2006, letter to the Court from the Warden at the Federal Medical Center at Butner, North Carolina, opined that Mr. Parker was competent to stand trial, but that "[i]t should be noted his competency is contingent on medication compliance." *Id.* at 1.

As a result of his illness, Mr. Parker has a low ability to cope with setbacks, such as loss of employment. Too much of Mr. Parker's life has consequently been spent committing (or in prison from committing) property crimes such as the instant offense. Like the instant offense, Mr. Parker's cases have involved no "violence" in the everyday sense of the word.[2] To the contrary, in the bank robberies, Mr. Parker appears to go out of his way to be polite and to inform the tellers that they are safe. *See, e.g.*, PSR, ¶ 7 (describing note passed to teller, "I want all of your $100 bills please! You are safe. Thank you kindly"). Indeed, in this case, the bank teller did not even initially understand that Mr. Parker was robbing the bank. After conversing with Mr. Parker, the bank teller did not even understand that the bank was being robbed. *See id.*, ¶ 7

---

[2] The government argues that Mr. Parker has been committing "violent criminal offenses" for thirty years, Gov. Mem. at 9, but given the actual facts of the cases, that claim cannot be taken seriously except in the legalistic sense that bank robberies are *per se* "crimes of violence." under U.S.S.G. § 4B1.2(a).

2

("the teller was not sure what defendant wanted and told him that while returning the note"). Mr. Parker's crimes appear to involve little premeditation, and Mr. Parker undertakes only the most minimal efforts at disguising his identity, *e.g.*, a baseball cap. It should also be noted that Mr. Parker's crimes do not appear to be motivated by drug use–as many bank robberies are–but rather by a condition not of his own making, his chronic and serious mental illness.

During the periods of time when Mr. Parker has been in society working and taking his medications, he has remained crime free. It is clear from Mr. Parker's history that when he works, he is a functional member of society. Most recently, Mr. Parker was working between his release from prison in June 2007 and October 2007. *See* PSR, ¶¶ 75-79a. During that time, Mr. Parker reports that he felt satisfied and comparatively stable, and that he could have continued in this manner. Unfortunately, Mr. Parker was terminated in October 2007 when he was hospitalized for mental health issues. *See id.*, 79a. His unemployed status in December 2007, approaching the holidays, was clearly a major factor behind the offense conduct in this case.

The information at paragraph 79a of the PSR, for example, demonstrates how Mr. Parker can live successfully following his release from custody in this case. *See id.*, ¶ 79a (stating that when Mr. Parker's psychological issues are managed, he can "'be a productive employee,'" and that his former employer, Kitchen Match, "would consider rehiring" Mr. Parker). Similarly, in her sentencing letter, Mr. Parker's sister, Donna Parker, likewise has reported to counsel on the mental health benefits that Mr. Parker gets from working.

**DISCUSSION**

I.   **Under the Section 3553(a) Factors, The Sentence "Sufficient But Not Greater Than Necessary" In This Case Is 37 Months.**

   A.   **The Guidelines For Bank Robbery.**

The Guideline for bank robbery is found at U.S.S.G. § 2B3.1(a)(1), and will always begin at an offense level 22 (20 plus 2 because "[t]he property of a financial institution was taken"). Recognizing that the facts and circumstances of bank robberies will vary wildly in terms of severity and dangerousness, the Guidelines provide for numerous substantial enhancements depending on the existence of specific offense characteristics. *See* U.S.S.G. § 2B3.1(b)(2)-(7). The base offense level may be substantially increased by factors such as whether a firearm was possessed (+5 levels), used (+6 levels), or discharged (+7 levels), or if a threat of death was made (+2 levels). *See id.*, § 2B3.1(b)(2); *see also id.*, Background Note ("The guideline provides for a range of enhancements where these factors are present").

When a person comes into a bank, demands money, hurts no one, and leaves, the base offense level will be a 22. Certainly, when compared to the guidelines for distributing small amounts of crack cocaine, an offense level 22 is relatively low. But that says much more about the utter unfairness of the crack guidelines than it does about the guideline for bank robbery. Indeed, when compared to street robbery crimes (*e.g.*, muggings), which are generally prosecuted in Superior Court, the federal Guidelines for unarmed bank robberies are quite high. Under the Superior Court Sentencing Guidelines, a person with Mr. Parker's mid-level criminal history (Category C) who commits an Assault with a Dangerous Weapon, a Robbery, or an Aggravated Assault, faces a low-end guideline range of only 30 months, which can be significantly further reduced through a "short-split sentence." *See* Ex. 2 (Superior Court Sentencing Guidelines,

4

Master Grid). This is so even though street robberies (and certainly ADWs and Aggravated Assaults) clearly present a far greater potential for violence–not to mention psychological trauma to the victims–than bank robberies, particularly where the bank is robbed in the relatively benign manner employed by Mr. Parker. Indeed, it is arguable that bank robberies such as the kind perpetrated by Mr. Parker are possible only because of the training provided to bank employees, which is to turn money over no matter how credible–or incredible–the threat (or, more accurately in this case, the barely implied threat) from the individual demanding (or, more accurately in this case, requesting) the funds. While the defense is in no way "blaming the victim," it is simply a fact that Mr. Parker's brand of bank robbery is far less serious than numerous crimes punished less harshly than three years in prison, a substantial sentence.

Finally, if the Court were, despite the above, to reach the conclusion that the sentencing guidelines for bank robbery are as a general matter too low, there are many reasons why 37 months is still the appropriate sentence in this case. Those reasons, discussed *infra*, include the relatively benign form of this bank robbery, as well as Mr. Parker's chronic and severe mental health affliction. Thus, respectfully, no matter what conclusion the Court may reach about the bank robbery guidelines as a general matter, there is no reason under the facts and circumstances of this case to impose greater than the low and of Mr. Parker's guideline range, which is 37 months.

      **B.**    **The Properly Calculated Guidelines Range In This Case Is 37 Months.**

The PSR correctly concludes (over the government's objection) that the Guidelines range in this case is 37-46 months. The government objects to this calculation, however, arguing that U.S.S.G. § 4A1.1(f) should lead to the imposition of due additional criminal history points based

5

on Mr. Parker's 1995 conviction. Under the plain meaning of the Guidelines, § 4A1.1(f) does not apply in this case, and therefore provides no increase in Mr. Parker's criminal history category or Guidelines range.

In his 1995 case, Mr. Parker was charged under one indictment with eight counts of robbery and one count of attempted robbery. The acts were committed over the course of three months. Consequently, Mr. Parker pled guilty under Rule 11(c)(1)(C) to three counts of robbery and received a sentence of 120 months imprisonment.

As Mr. Parker has just one prior sentence from the 1995 case–instead of two or more sentences that are counted as a single sentence–§ 4A1.1(f) does not apply. According to § 4A1.1(f), one point is added for each prior sentence that results from a crime of violence that does not receive points under (a), (b), or (c) because "such sentence was counted as a single sentence." U.S.S.G. § 4A1.1(f). In other words, and as the Probation Officer has correctly found, § 4A1.1(f) applies where a defendant is convicted of separate crimes ***in separate cases***, but is subject to one sentencing hearing, as the cases are consolidated. Thus, § 4A1.1(f) applies only to situations of multiple prior sentences from multiple cases that are consolidated for the purposes of sentencing. Here, Mr. Parker does not have a single sentence because multiple cases were consolidated; rather, he was sentenced for multiple charges in one case.[3]

The government's reliance on Application Note 6 is misplaced. Section 4A1.1(f), note 6,

---

[3]     The term "conviction" does not necessarily mean each finding of guilt, rather, it logically refers to the judge's decision rendering the sentence. In this respect, 18 U.S.C. § 3584(c) is instructive. That provision states:

> **Treatment of multiple sentences as an aggregate.** Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

explains that the provision is applicable where the "defendant received two or more prior sentences as a result of convictions for crimes of violence that are counted as a single sentence." Note 6 gives an example of a defendant whose criminal history includes "two robbery convictions for offenses committed on different occasions" for which the sentences were imposed on the same day, which then would be considered a single sentence under § 4A1.2(a)(2). This example is factually distinct from the present case because there are not two cases from 1995 that have been consolidated, there is only one case.[4]  *Cf.* 18 U.S.C. § 3584(c) ("[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment").

The government's reading of § 4A1.1(f)–that extra points should be added whenever a defendant pleads guilty in one case to two counts involving crimes of violence–proves far too much.  Under the government's reading, defendants would routinely receive 4 points for a single prior sentence.  For example, when a defendant is convicted in the same case both of being a felon-in-possession and carrying a firearm during a drug trafficking offense (a fairly routine occurrence in this District and elsewhere), the government's reading of § 4A1.1(f) would lead to the imposition of 4, not 3, criminal history points in nearly every case.[5]  And yet, a single conviction for murder would still lead to just 3 criminal history points under the Guidelines.

\

---

[4]     While the government argues that in *Deal v. United States*, the Supreme Court held that a "conviction" is a finding of guilt on any one count, the decision was narrowly focused on the use of "conviction" under § 924(c) and the Court took into account the legislative history of that statute in rendering its decision.

[5]     This hypothetical assumes that the offense of felon-in-possession is classified as a "crime of violence," an issue on which the Courts of Appeal remain split.

**B.     Edward Haskell Parker and the 18 U.S.C. § 3553(a) Factors.**

As applied to Mr. Parker, the 3553(a) factors strongly support a sentence of no more than 37 months, which is the low end of Mr. Parker's Guidelines range. The reasons are set forth below.

**1.     The History and Characteristics of Mr. Parker.**

Mr. Parker is a very sad individual who has had a very difficult life. Beset by chronic and serious mental illness since a young age, Mr. Parker has never physically hurt anyone and yet has spent the majority of his life incarcerated at either in a prison or a mental health institution. Although Mr. Parker is relatively stable when on his medication, the difficulties facing someone like Mr. Parker in his day-to-day life (such as in obtaining employment) depress him and he occasionally stops taking his medication. That in turn leads him to behavior generally more destructive to himself than anyone else, such as walking into banks and asking for money, with only the most minimal efforts at disguising his identity.

When Mr. Parker both has a job and complies with his medication, he can live a productive and crime-free life. A sentence of 37 months followed by three years of supervised release punishes Mr. Parker sufficiently for his crime but still permits him to build a life–through a job and mental health counseling–when he is released.

**2.     The Nature and Circumstances of the Offense.**

In terms of the nature and circumstances of the offense, Mr. Parker's robbery was as benign as a bank robbery can be. Mr. Parker's note to the bank teller said, "I want all of your $100 bills please! You are safe. Thank you kindly." After conversing with Mr. Parker, the bank

teller did not even understand that the bank was being robbed. *See* PSR, ¶ 7 ("the teller was not sure what defendant wanted and told him that while returning the note"). When the teller finally figured it out, he gave Mr. Parker a relatively small amount of money. Mr. Parker then left the bank without incident.

### 3.   Alternative Sentences Available.

Section 3553(a) also instructs sentencing courts to consider "the kinds of sentences available" to the Court. In this case, one principal concern with Mr. Parker at this point in time is his mental health and marijuana use. Based on the issues surrounding Mr. Parker's mental health background, the best thing the Court can do for all parties is to structure his sentence so that, once released, he receives optimal mental health counseling on an outpatient basis. There is no good reason for Mr. Parker to serve above the low end of his guidelines range–37 months–before receiving that treatment.

### 4.   Restitution.

The government urges the Court to impose both forfeiture and restitution, which would have the overall effect of imposing a financial penalty against Mr. Parker (which he has no means of paying) well above the amount of money Mr. Parker received from the bank. The law does not allow for restitution beyond the victim's actual losses, as "the ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event." *United States v. Trigg*, 119 F.3d 493, 500-01 (7th Cir. 1997) (holding that multiple defendants may be jointly and severally liable, and therefore each responsible for an entire restitution amount, but victim may not ultimately recover more than the amount of its loss). In *United States v. Holland*, 141 Fed. Appx. 589, 591 (9th Cir. 2005) (unpublished), for example, the defendant was convicted

of willfully assisting in the filing of false tax returns. On appeal, the court remanded for reconsideration of the restitution order, in light of the fact that the IRS had already recovered a large portion of its losses, and that the amount recovered should be offset against the restitution amount, in order to prevent double recovery. *Id.* at 591.

The existence of a criminal forfeiture provision in the plea agreement does not defeat Mr. Parker's right to an offset. In *United States v. Ruff*, 420 F.3d 772 (8th Cir. 2005), defendant signed a plea agreement admitting to a drug offense, and agreeing to pay restitution of $9,985, the amount spent by police officers in controlled drug buys from the defendant. At sentencing, the district court denied the defendant's request to offset the amount of restitution he would owe by the amount of currency that had been seized at the time of defendant's arrest ($1,476), and the money received from the sale of defendant's automobile, which was also seized. *Id.* at 773. The Eighth Circuit considered the question of whether such an offset was either required or prohibited under the Mandatory Victims Restitution Act (MVRA).

In *Ruff,* the court discussed the unlikelihood that the proceeds from the forfeiture would qualify as "compensatory damages" under the section of the Mandatory Victim Restitution Act ("MVRA") that provides for reduction of a restitution amount by the amount of any "compensatory damages for the same loss by the victim." Regardless of that fact, however, the *Ruff* court held that the bar against double recovery should apply just as it would if the forfeiture *did* qualify as compensatory damages. *Id.* at 775. The same logic should apply here.

Similarly, in *United States v. Smith*, 297 F. Supp.2d 69 (D.D.C. 2003), the defendant requested that the amount of money forfeited to the government be used to offset the restitution owed for fraud committed against insurer. *Id.* at 71. The court held that it had discretion to order

such an offset, and distinguished holdings such as that in *United States v. Alalade*, 204 F.3d 536, 540 (4th Cir. 2000), because the funds recovered by administrative forfeiture had been remitted to the victim, whereas in *Alalade* they were not, making the offset an important part of preventing double recovery by the victim, and fulfilling the MVRA's instruction that restitution be based on a victim's *actual* loss. *Id.* at 73. And in *United States v. O'Connor*, 321 F. Supp. 2d 722, 729 (E.D. Va. 2004), the court allowed the defendants' restitution obligations to be met in part through the forfeited funds. *Id.* at 730. The Court should adopt the same reasoning here as in the above cases and reduce Mr. Parker's restitution obligation by the amount of the forfeited funds.

**C.     Requested Recommendations.**

Finally, Mr. Parker respectfully requests that the Court make two recommendations to the Bureau of Prisons. First, Mr. Parker respectfully requests that the Court recommend the 500 hour drug treatment program. The PSR contains ample support for Mr. Parker's need for this program. Second, Mr. Parker respectfully requests that the Court recommend that Mr. Parker serve his sentence at a Federal Medical Center, preferably the FMC in Butner, North Carolina. Given Mr. Parker's mental health issues, that would strongly appear to be an appropriate recommendation.

## CONCLUSION

Based on the foregoing, and for any other reasons the court believes are just and proper, the defense respectfully requests that the Court sentence Mr. Parker to no more than 37 months imprisonment. In addition, Mr. Parker's restitution obligation should be reduced by the amount of money recovered from him ($535) at the time of his arrest.

                                            Respectfully submitted,

                                            A.J. Kramer
                                            Federal Public Defender

                                            _____/s/_____
                                            Jonathan S. Jeffress
                                            <u>Counsel for Haskell Edward Parker</u>
                                            Assistant Federal Public Defender
                                            625 Indiana Avenue, N.W.
                                            Washington, D.C. 20004
                                            (202) 208-7500, ex. 134

# EXHIBIT 2

Appendix A - MASTER GRID
June 14, 2004

| | Ranking Group<br>Most Common Offenses | Criminal History | | | | |
|---|---|---|---|---|---|---|
| | | 0 to ½<br>A | ¾ to 1¾<br>B | 2 to 3¾<br>C | 4 to 5¾<br>D | 6 +<br>E |
| **3 Points*** | **Group 1**<br>1st degree murder w/armed<br>1st degree murder | 360 - 720 | 360 - 720 | 360 - 720 | 360 - 720 | 360 + |
| | **Group 2**<br>2nd degree murder w/armed<br>2nd degree murder<br>1st degree sex abuse<br>1st degree sex abuse w/armed | 144 - 288 | 156 - 300 | 168 - 312 | 180 - 324 | 192 + |
| | **Group 3**<br>Voluntary manslaughter w/armed<br>1st degree child sex abuse<br>Carjacking while armed<br>Assault with intent to kill w/armed<br>Armed burglary I | 90 - 180 | 102 - 192 | 114 - 204 | 126 - 216 | 138 + |
| | **Group 4**<br>Aggravated assault w/armed<br>Voluntary manslaughter | 48 - 120 | 60 - 132 | 72 - 144 | 84 - 156 | 96 + |
| | **Group 5**<br>Possession of firearm /CV<br>Armed robbery<br>Burglary I<br>Obstruction of justice<br>Assault with intent to kill | 36 - 84 | 48 - 96 | 60 - 108 | 72 - 120 | 84 + |
| **2 Points*** | **Group 6**<br>ADW<br>Robbery<br>Aggravated assault | | 24 - 66 | 30 - 72 | 36 - 78 | 42 + |
| | **Group 7**<br>Burglary II<br>3rd degree sex abuse<br>Negligent homicide<br>Assault w/I to commit mayhem<br>Attempt 2nd degree sex abuse | 12 - 36 | | 24 - 48 | 30 - 54 | 36 + |
| **1 Point*** | **Group 8**<br>CPWOL<br>UUV<br>Attempt robbery | 6 - 24 | 10 - 28 | | 18 - 36 | 22 + |
| | **Group 9**<br>Escape/prison breach<br>BRA<br>Receiving stolen goods<br>Uttering<br>Forgery<br>RSP | 1 - 12 | 3 - 16 | 5 - 20 | | 9 + |

*Criminal History Points for prior convictions in these groups.
White/unshaded boxes – prison only.
Light shaded boxes – prisons, short split, or probation permissible.